USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/17/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

MM ARIZONA HOLDINGS LLC,

Plaintiff,

against

08 Civ. 5353 (CM)

NICHOLAS W. BONANNO, JR. et. al.,

Defendants.

---------------------------------------------------------------x

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL DEFENDANTS EXCEPT ALLEN D. JENKINS**

McMahon, J.:

## I. Background

Plaintiff MM Arizona Holdings LLC (hereinafter "MMAZ") brought this suit against defendants Nicholas W. Bonanno, Jr., Rita Bonanno, Allen D. Jenkins, and the Estate of Tamera R. Jenkins (hereinafter "Defendants"), for judgment on a guaranty. Plaintiff now moves for summary judgment on its first, second, and fourth claims for relief and for dismissal of all of Defendants' affirmative defenses. Nicholas W. Bonanno and Rita Bonanno (hereinafter, "Bonannos") in turn ask that summary judgment be denied, or, alternately, that the Court allow the Bonannos an opportunity to conduct discovery under Federal Rule of Civil Procedure 56(f) before considering the summary judgment motion.

This dispute stems from a loan (hereinafter "the Loan"), for the sum of $44 million given on July 13, 2006 to non-party Middle Mountain 156, LLC (hereinafter "Borrower") by non-party Lehman Brothers Holding Inc., d/b/a Lehman Capital (hereinafter "Lender", or "Lehman"). The loan, which is evidenced by a promissory note (hereinafter "the Note"), was to be used for development of property in Arizona. (Pl.'s Rule 56.1 Stmt. ¶1.)[1] On the same date, Defendants

[1] Defendants failed to file a Rule 56.1 Statement in opposition to plaintiff's motion for summary judgment, and so all the averments of fact in Plaintiff's Rule 56.1 Statement—though not the conclusions plaintiff draws therefrom—are

executed and delivered a Guarantor Full Repayment Guaranty (hereinafter "the Guaranty"), pursuant to which they agreed to guarantee to Lender the payment of the obligations of Borrower to Lender under the Loan. (Id. ¶¶3-6). MMAZ is the current holder and owner of the Loan and Guaranty. (Id. ¶7).

The Loan matured on August 1, 2007, and became due and payable in full, together with interest, fees, and charges. (Id. ¶8). Borrower failed to satisfy its obligations to Lender under the Loan, and neither Borrower nor Defendants made any payment on the Loan after its maturity date. (Id. ¶9-10).

On April 16, 2008 (denoted in the Agreement as the "Effective Date"), Lender entered into a Forbearance Agreement (hereinafter "Forbearance Agreement") with Borrower and Defendants, among others (Id. ¶11). The Forbearance Agreement included definitions of certain key terms. 'Borrower Parties' was the term designated to refer collectively to the Borrower, the Guarantors, and certain corporate entities controlled by the Guarantors. (Forbearance Agreement, at 1). The term 'Lender Parties' was designated to refer collectively to, among other entities, Lehman Brothers and any successors or assigns of Lehman Brothers (which includes Plaintiff). (Id. §1.01). The Agreement provided, *inter alia*, that the Lender would not seek to enforce the obligations of the Borrower or Defendants under the Loan unless and until one of a number of specified Termination Events shall have occurred. (Forbearance Agreement §4.01(a)). Among the Termination Events listed was the failure of Borrower to repay the debt in full by May 15, 2008 (the Termination Date), unless the Loan was restructured before then. (Id. §§1.01, 6.01(k)).

In the Forbearance Agreement, as signed, the Borrower Parties (including Defendants) agreed, among other things, that the Loan and Guaranty constituted valid and legally binding obligations, and that:

> The Borrower Parties and each of them, jointly and severally, on behalf of themselves and all of their respective heirs, successors, and assigns, do hereby remise, release, acquit, waive, satisfy and forever discharge the Lender Parties from any and all manner of...defenses, setoffs, actions, claims, demands, and causes of action of any nature whatsoever, whether at law or in equity, whether known or unknown, either now accrued or hereafter maturing, which the Borrower Parties, or any of them, now have or hereafter can, shall, or may have

---

deemed admitted. Holtz v. Rockefeller & Co., Inc., 258 F. 3d 62, 72 (2d Cir. 2001); Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004).

> by reason of any matter, cause, or thing from the beginning of the world to and including the Effective Date of this Agreement, arising out of or relating to [the Loan].

Id. §§2.03(a), 5.01, Pl.'s Rule 56.1 Stmt. ¶15. The Defendants were represented by counsel during negotiation of the Forbearance Agreement, and all oral and written negotiations between Lender and the Defendants were conducted through counsel. (Pl.'s Rule 56.1 Stmt. ¶¶ 13, 14).

The Loan was not paid in full by the Termination Date, nor was it restructured. (Id. ¶17). On June 11, 2008, Plaintiff filed its Complaint for judgment on the guaranty. Plaintiff now moves for summary judgment against the Bonannos and the Estate of Tamera R. Jenkins.[2]

## II. Standard of Review for Motions for Summary Judgment

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Whether any disputed issue of fact exists is for the Court to determine. Balderman v. United States Veterans Admin., 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industries Co., 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

[2] Defendant Allen Jenkins has filed for personal bankruptcy, and the Court has stayed this action as against that defendant. (Docket No. 35).

## III. Discussion

A. Plaintiff's *prima facie* case of default on the Guaranty

All of the documents at issue in this dispute (the Note, the Guaranty, and the Forbearance Agreement) contain choice of law provisions providing that they will be governed by New York law. "In New York, with exceptions not relevant here, a choice of law provision in a contract is valid and enforceable." Schiavone Const. Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996); *see also* Turtur v. Rothschild Registry Int'l. Inc., 26 F.3d 302, 310 (2d Cir. 1994); N.Y. Gen. Oblig. Law §5-1401 (McKinney 2007).

Under New York law, to establish a *prima facie* case of default on a promissory note, plaintiff must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment. Export-Import Bank of U.S. v. Agricola Del Mar BCS, 536 F.Supp.2d 345, 344 (S.D.N.Y. 2008). A *prima facie* case of default on a guaranty is likewise made out by proof of a valid guaranty and proof of the defendant's failure, despite proper demand, to make payment. Id. at 350. Guaranties are governed by the rules of contracts. Id.

> A valid guaranty must be a written instrument guaranteeing payment of another's debt, describing with precision the obligation to which the person is bound. Consideration for the guaranty must be expressly or impliedly stated in the instrument, and the instrument must be delivered to, and accepted by, the guarantor. Further, liability under a guaranty depends on the terms of the underlying promissory note.

Id.

The Bonannos do not contend that the Guaranty fails to meet these requirements, nor do they contend that the underlying Note is invalid. The Bonannos also do not challenge the assertion that proper demand for payment was made,[3] nor do they dispute that they failed to pay. Therefore, Plaintiff has made out its *prima facie* case.

B. Affirmative defenses

The Bonannos assert four affirmative defenses in their response—(1) that the Guaranty is void because Lehman fraudulently induced the Bonannos to execute the Guaranty and Borrower to execute the Loan; (2) that Lehman and Plaintiff breached the Loan before any default by

---

[3] In this case, the Guaranty contained a clause waiving Defendants right to demand for payment. This kind of waiver is generally enforceable. *See* Lakhaney v. Anzelone, 788 F.Supp. 160, 164 (S.D.N.Y. 1992). In any event, Lender made demands for payment, through a demand letter sent August 2007, and a second demand letter sent October 2007.

Borrower; (3) that the Forbearance Agreement is void because Plaintiff and Lehman fraudulently induced the Bonannos to execute it; and (4) that Plaintiff, through Lehman, exercised such dominion and/or effective control over the property at issue that it became a partner and/or co-venturer of Borrower and the Bonannos. None withstands scrutiny.

(i) Plaintiffs are entitled to summary judgment dismissing Bonannos' Affirmative Defense that the Forbearance Agreement is void and unenforceable

In their third affirmative defense, the Bonannos allege that the Forbearance Agreement itself is void and unenforceable. They assert two reasons why this is so.

First, they contend that the length of the forbearance period was insufficient consideration for the relinquishment of all claims or defenses agreed upon. The Bonannos cite no authority for this point, because there is none. Under New York law, forbearance of any length can constitute valid consideration. *See* Sun Forest Corp. v. Shvili, 152 F.Supp.2d 367, 392 (S.D.N.Y. 2001). Further, it is a settled principle of New York contract law that courts will rarely if ever investigate the adequacy of the consideration exchanged.

> "Under the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value. Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny. It is enough that something of 'real value in the eye of the law' was exchanged."

Apfel v. Prudential-Bache Securities, Inc., 81 N.Y.2d 470, 475-76 (N.Y. 1993) (citations omitted). The agreement by Lender to forbear from pursuing its rights under the Guaranty is something of real value in the eye of the law. *See e.g.* Rogowsky v. McGarry, 55 A.D.3d 815, 816 (N.Y.A.D. 2nd Dept. 2008) ("[F]orbearance from the assertion of a legal right has long been held to constitute valid consideration"). Therefore, the agreed-upon forbearance period contained in the Forbearance Agreement is sufficient consideration for the release contained in that Agreement.

Second, the Bonannos also claim that they were fraudulently induced to enter into the Forbearance Agreement. However, they offer not a scintilla of evidence to support the claim.

"To prove fraudulent inducement under New York law, a plaintiff must show: "(i) the defendant made a material false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably relied upon the representation, and (iv) the plaintiff suffered damage as a result of such reliance." Lumbermans Mut. Casualty Ins. Co. v. Darel Group U.S.A.

Inc., 253 F.Supp.2d 578, 583 (S.D.N.Y. 2003). "Under New York law, the...elements of a fraud claim must be shown by clear and convincing evidence." Crigger v. Fahnestock and Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006).

Even at the pleading state, "[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Second Circuit "has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (citations omitted). This requirement "must be met even in suits in which subject matter jurisdiction is based, as here, on diversity of citizenship and in which state law controls the elements of the fraud claim." Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007). The requirements of 9(b) apply to affirmative defenses alleging fraud. Yurman Design, Inc. v. Chaindom Enterprises, Inc., 2002 WL 31358991, at *2 (S.D.N.Y. Sept. 30, 2002); Park & Lexington 25th Street Corp. v. Federal Ins. Co., 1995 WL 217552, at *1 (S.D.N.Y. Apr. 13, 1995). At the summary judgment stage, a party must come forward with evidence to support the particularized allegations of fraudulent inducement.

As stated *supra*, Plaintiff has made out a *prima facie* case that the Guaranty is valid and enforceable. The burden now is on the Bonannos to show that there exists a genuine issue of material fact as to why Plaintiff should not have judgment against them. In meeting this burden, "The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

The Bonannos have not met this burden regarding their claim of fraudulent inducement. Nowhere in the record is there any evidence to support the Bonannos' contention that they were fraudulently induced to execute the Forbearance Agreement.

In the affidavit of Nicholas Bonanno (hereinafter "Bonanno Affidavit"), no facts are alleged regarding the alleged fraudulent inducement; there is only the conclusory statement, "[T]hat the Forbearance Agreement dated April 16, 2008 is void and unenforceable, because Plaintiff and its predecessor-in-interest fraudulently induced the Bonannos to execute that document." (Bonanno Affidavit ¶9C).

In their brief opposing Plaintiff's motion, the Bonannos do no more than repeat this bare, conclusory statement. They do not identify a single speaker, a single statement, or a single action taken by Lehman Brothers, Plaintiff, or any Lender Party that fraudulently induced them to execute the Forbearance Agreement.

On a motion for summary judgment, where a party may not rest on conclusions but must offer evidence to support a claim, this lack of evidence is fatal.

In the brief opposing dismissal of their counterclaims (Docket No. 40), the Bonannos devote several pages to discussing some scheme involving the Loan and the Guaranty. However, they offer no evidence to support the allegations in the brief. A brief is not evidence, and the Bonanno Affidavit, which is (or ought to be) evidence, says nothing about the so-called scheme.

Furthermore, this brief barely mentions the Forbearance Agreement, except to say, "Lehman Brothers induced the Bonannos and Middle Mountain to execute the Forbearance Agreement as a component of the same fraudulent scheme described above." (Id. at 19). In no way do the Bonannos explain how the Forbearance Agreement fits in with the scheme they describe. They fail to identify a speaker or a specific concrete statement or action, made on a specific day, that constituted a fraud. Nor have they explained how they relied on the unidentified fraudulent representations or why their reliance was reasonable.

Defendants have failed to raise a genuine issue of material fact with regards to their claim of "fraud.". The third affirmative defense—that the Forbearance Agreement is void and unenforceable—must be and is dismissed.

(ii). The Forbearance Agreement precludes the Bonannos' first, second, and fourth affirmative defenses

Of the Bonannos' affirmative defenses, the first, second, and fourth involve claims about events that occurred before the parties entered into the Forbearance Agreement. The Bonnanos have waived their right to these defenses.

"A release is a type of contract and is governed by contract law. Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not the product of fraud, duress, or undue influence." Hummel v. AstraZeneca LP, 575 F.Supp.2d 568, 570 (S.D.N.Y. 2008); *see also* Difilippo v. Barclays Capital, Inc., 552 F.Supp.2d 417, 426 (S.D.N.Y. 2008); Skluth v. United Merchants & Mfrs., Inc., 163 A.D.2d 104, 106 (N.Y. A.D. 1st Dept. 1990). "An unconditional

waiver of defenses is valid and enforceable when entered into voluntarily." Export-Import Bank of U.S. v. Agricola Del Mar BCS, 536 F.Supp.2d 345, 350 (S.D.N.Y. 2008).

The Bonannos do not contest that the Forbearance Agreement was negotiated and reviewed by counsel prior to the Defendants signing the document. The Bonnanos do not dispute that they signed the Forbearance Agreement, or that they were represented by counsel during the negotiation of the Agreement. Their counsel reviewed the Agreement before the Bonnanos signed it, and all negotiations between the Defendants and Lehman regarding the Agreement were conducted by counsel for each party. (Pl.'s Rule 56.1 Stmt. ¶¶12-14). Nowhere do they claim that they unknowingly or involuntarily entered into the Agreement.

Section 5.01, titled "Release and Covenant Not to Sue Lender Parties," clearly and unambiguously states that Defendants release the Lender Parties (including Plaintiff, as assignee of Lehman), from any and all of their defenses relating to the Loan that they have up to and including the date on which they signed the Agreement (the Effective Date—April 16, 2008). (Forbearance Agreement §5.01). The Bonannos' first, second, and fourth affirmative defenses all relate to events that occurred prior to the effective date of the Agreement. For example, the first affirmative defense alleges fraud in the signing of the Loan and Guaranty, which took place on July 13, 2006, nearly two years before the execution of the Forbearance Agreement. The second affirmative defense alleges that Lehman breached the Loan prior to default by the Borrower. Borrower defaulted on August 1, 2007, and so any alleged breach by Lehman would have occurred prior to the execution of the Forbearance Agreement. Finally, the fourth affirmative defense—that Lehman became a co-venturer or partner of the Borrower and the Bonannos—necessarily involves events that would have taken place prior to the Forbearance Agreement.

The release in the Forbearance Agreement is enforceable, so the Bonannos' first, second, and fourth affirmative defenses are precluded by the doctrine of release.

C. The Bonannos' Request for Additional Discovery Under Rule 56(f)

The Bonannos contend that they should be permitted to conduct additional discovery before their affirmative defenses are dismissed. They rely on Federal Rule of Civil Procedure 56(f), which reads:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be

> obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f).[4]

A district court's decision whether to grant a motion for a continuance under Rule 56(f) is discretionary. *See e.g.* Alcantara v. City of New York, 2009 WL 1767624, at *13 (S.D.N.Y. 2009). The Second Circuit has established a four-part test for evaluating the sufficiency of an affidavit submitted pursuant to Rule 56(f). The affidavit must include, "1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985).

"Defendant's Rule 56(f) affidavit must establish a reasonable expectation that the proposed discovery will provide evidence to support the insufficient elements of his affirmative defenses." Continental Airlines, Inc. v. Lelakis, 943 F.Supp. 300, 310 (S.D.N.Y. 1996). Rule 56(f) is designed to allow a party to fill in evidentiary gaps in support of its claims, not engage in a 'fishing expedition' or search for evidence that might provide a claim. *See* Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) (collecting cases).

The Bonnano Affidavit does not meet the standard for Rule 56(f) relief. The affidavit, though claiming to describe facts expected to be established through discovery, merely states, "[F]acts supporting the Defendants' affirmative defenses will be obtained through depositions, interrogatories, requests for production, requests for admissions and other discovery devices." (Bonanno Affidavit ¶10). The affidavit does not state specifically what facts are sought from the plaintiff. As established *supra*, the only affirmative defense that was not necessarily wiped out by the Forbearance Agreement is the claim that the Bonannos were fraudulently induced into executing that Agreement. The Bonanno Affidavit fails to explain why additional discovery is needed to support that claim, since presumably the Bonannos know what they were told (and by whom) that induced them to enter into the Agreement.

---

[4] In 2007, the language of Rule 56(f) was changed as part of the general restyling of the Rules of Civil Procedure. Defendants' Brief and much of the caselaw refers to the previous language of the Rule; however, as the 2007 changes were intended to be stylistic only, this does not affect the analysis. *See* Advisory Committee Notes, Fed. R. Civ. P. 56.

A conclusory accusation accompanied by a generalized request for additional discovery is the type of fishing expedition under 56(f) disfavored by the courts. *See* Paddington, 34 F.3d at 1138. Having already failed to come forward with evidence supporting their affirmative defenses, the Bonannos cannot simply reassert those defenses generally in an affidavit and claim that if established through further discovery, the defenses will create a genuine issue of material fact. They must provide some sort of indication of the facts they are seeking and how their proposed discovery will support those facts. Burlington Coat Factory, 769 F.2d at 926.

Further, the Bonanno Affidavit contains no mention of any efforts by the Bonannos to obtain the 'facts' they seek, or why those efforts were unsuccessful. In fact, it appears that the Bonannos have made no efforts to conduct any discovery in this case, despite an endorsed letter entered by the Court on September 26, 2008 informing the Bonannos' counsel that, "[B]y the time you show up [for a scheduled pre-trial conference] your 6 months to take discovery will be over, so I hope you are starting now—do not wait for December." (Docket No. 34). While the Court stayed discovery on October 24, 2008 pending its ruling on Plaintiff's motion to dismiss counterclaims, that motion was decided December 10, 2008 (Docket No. 49). This means that for close to four months—from the time the Bonannos filed their Amended Answer on August 27, 2008, to the October 24 stay of discovery, and then from the December 10 decision until the Bonannos' response to the summary judgment motion—the Bonannos have not attempted to obtain any discovery in this case.

While it is true that "failure to comply with the third and fourth requirements is not automatically fatal to a Rule 56(f) affidavit", Paddington, 34 F.3d at 1139, the failure in this case to attempt to conduct any discovery or to explain why no attempts were made does weigh in favor of denying Rule 56(f) relief. *See* id. ("Requests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored, and [the party opposing summary judgment] has offered very little in the way of support for its claim that its access to discovery was denied or diligently pursued.").

This is not a case where the Bonannos have had no opportunity to conduct discovery, or where their attempts at discovery have been thwarted or delayed by opposing parties. The fact that the Bonannos have not attempted any discovery so far, coupled with the lack of any specific facts named in the Bonanno Affidavit that discovery would be expected to establish, lead to the

conclusion that allowing further time for discovery would not show the existence of any genuine issues of material fact.

D. The Estate of Tamera R. Jenkins

The Estate of Tamera R. Jenkins did not respond to Plaintiff's motion for summary judgment, and is in default. Allen Jenkins is the personal representative of the Estate. Jenkins is in bankruptcy and this action is stayed as to him personally. However, it is not stayed as to the Estate or as to Jenkins in his capacity as personal representative of the Estate, as far as the Court knows.

The record reveals that Tamera Jenkins was also a guarantor of the Note. The Estate is liable on the Note. Thus, Plaintiff's motion for summary judgment is granted on default.

**IV. Conclusion**

MMAZ has sufficiently established a *prima facie* case for summary judgment on the Guaranty. In turn, the Bonannos have not made a showing that there are any genuine issues of material fact, nor have they shown that they should be entitled to conduct further discovery under Rule 56(f). For the foregoing reasons, plaintiff's motion for summary judgment against the Bonannos and the Estate of Tamera Jenkins is GRANTED. Plaintiff shall submit a proposed judgment within 5 days. Once judgment is entered as to the Bonannos and the Estate of Tamera Jenkins, the Clerk of the Court will place this action on the suspense calendar until Allen Jenkins' bankruptcy is concluded.

This constitutes the decision and order of the Court.

Dated: September 17, 2009

U.S.D.J.